UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORIS FREYRE,

    **Plaintiff,**

vs.                                                    Case No. 8:13-cv-02873-T-27TBM

HILLSBOROUGH COUNTY
SHERIFF'S OFFICE et al.,

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are motions to dismiss the Amended Complaint filed by Defendants Julie Emerson (Dkt. 36), Alexa Argerious, Angeline Atilla, Jill Adams, and Tiffany Short (Dkt. 37), Sheriff David Gee in his official capacity of Sheriff of Hillsborough County (Dkt. 44), Jessica Pietrzak (Dkt. 45), Iris C. Valdez-Corey (Dkt. 46), and the State of Florida (Dkt. 47).[1] Plaintiff responded in opposition to all of the motions (Dkts. 52, 54, 50, 53, 51). The State of Florida, Emerson, Argerious, Atilla, Adams, and Short filed a joint Reply (Dkt. 64), as did Sheriff Gee, Pietrzak, and Valdez-Corey (Dkt. 65).

Upon consideration, the motions to dismiss filed by Emerson, Argerious, Atilla, Adams, Short, Pietrzak, Valdez-Corey, and the State of Florida (Dkts. 36, 37, 45, 46, 47) are GRANTED. The motion to dismiss filed by Sheriff Gee (Dkt. 44) is GRANTED *in part* and DENIED *in part*. Accordingly, Counts I through III of the Amended Complaint are dismissed without prejudice and Plaintiff is granted leave to file a second amended complaint.

---

[1] Defendant Nextgen Alliance, Inc. did not respond to the Amended Complaint.

1

I.  **INTRODUCTION**

Plaintiff Doris Freyre is allegedly disabled due to a back injury and carpel tunnel syndrome, leaving her unable to lift more than ten pounds (Dkt. 29 ¶ 32). Freyre's daughter, M.A.F., was born with severe developmental and physical disabilities and required assistance with all daily tasks (*id.* ¶ 34). M.A.F. remained in a wheelchair or in bed at all times and could not lift or reposition herself without assistance (*id.*). Despite Freyre's disability, she cared for M.A.F. as a single parent, receiving additional support from Medicaid for home health services, home-bound schooling, and physical and speech therapy (*id.* ¶ 37). Until March 29, 2011, Freyre received home health care assistance every day from 7:00 a.m. until midnight, but did not have home health care during the early morning hours (*id.* ¶ 38).

On March 16, 2011, the Hillsborough County Sheriff's Office allegedly received a report that Freyre was not adequately caring for M.A.F. and was reluctant to take her daughter to the hospital when medical care was required (*id.* ¶ 39). As a result of the report, Defendant Jessica Pietrzak, a Child Protective Investigator with HCSO, began an investigation into Freyre's care of M.A.F. (*id.* ¶ 40). Pietrzak spoke with M.A.F.'s care coordination nurse, Julie Emerson, who was employed by Children's Medical Services, a division of the Florida Department of Health (*id.* ¶¶ 22, 40). In their March 21, 2011 conversation, Emerson allegedly told Pietrzak that Freyre "seems to be overwhelmed" and informed Pietrzak of her concerns that Freyre was physically unable to care for M.A.F. without additional home health care assistance (*id.* ¶ 40). Emerson also allegedly informed Pietrzak that "there does not appear to be any indication that the family will get 24 hour care" and that "no other family or back up care exists for the child" during the early morning hours (*id.*).

As a result of the call between Emerson and Pietrzak, state agencies allegedly convened a "multi-disciplinary staffing" attended by Emerson and Pietrzak, as well as Maxim Clinical

Supervisor Erin Thompson, Child Protection Specialist Laura Dill, "CMS FHP" Joanne White, Sheriff's Office Child Protective Investigations General Manager Heather Grates, and Alexis Argerious, the Assistant Attorney General for Children's Legal Services (*id.* ¶ 41). After receiving input from the others in attendance, Argerious decided to file a petition to shelter[2] M.A.F. at Tampa General Hospital until a medical foster home could be secured (*id.* ¶ 42). The petition was filed on March 30, 2011, in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida (*id.*).

At the hearing on the petition to shelter, Freyre denied that she had abused M.A.F. and argued that she missed medical appointments "because she did not want to take M.A.F. out and expose her to germs or inclement weather," and because "she was a better judge of M.A.F.'s medical condition and medical needs" than others (*id.* ¶ 44). After argument, the Circuit Court granted the petition to shelter, but also decided that Freyre was entitled to unlimited visitation with M.A.F., and that M.A.F. was to be returned home as soon as Freyre procured home health care from midnight to 7:00 a.m. (*id.* ¶ 45).

Following the hearing, Hillsborough Kids, Inc.[3] Resource Specialist Kris Karstens[4] tried to procure additional home health care for M.A.F. during the early morning hours (*id.* ¶ 47). After initial progress, Freyre alleges that Emerson telephoned Karstens and advised him to stop all attempts to obtain nursing care for M.A.F. (*id.* ¶ 52). Specifically, Freyre alleges that Emerson falsely informed Karstens that Medicaid has not and would not authorize 24-hour care for M.A.F. (*id.* ¶¶

---

[2]To "shelter" a child means "placement with a relative or a nonrelative, or in a licensed home or facility, for the temporary care of a child who is alleged to be or who has been found to be dependent, pending court disposition before or after adjudication." § 39.01(68), Fla. Stat. (2013).

[3]Hillsborough Kids, Inc. changed its name to Nextgen Alliance, Inc. on July 26, 2013 (Dkt. 29 ¶ 17), and is named as a Defendant under the latter name.

[4]Karstens is alternatively spelled with a "C" and a "K" in the Amended Complaint. For consistency, the initial spelling–with a "K"–is used.

3

52, 53). Accordingly, Emerson believed it to be inappropriate for Hillsborough Kids to attempt to obtain temporary 24-hour care until Medicaid could approve it, because Freyre would not be able to care for M.A.F. after the stopgap coverage concluded (*id.* ¶ 52).

Allegedly due to Emerson's assertions regarding the unavailability of 24-hour care, the agencies and child protective services involved in M.A.F.'s care and investigation concluded that 24-hour care for M.A.F. would not be available and ceased attempts to obtain the care required between midnight and 7:00 a.m. As a result, HCSO employees and other state agencies allegedly agreed that M.A.F. would not be reunited with Freyre, and they began the process of finding institutionalized care for M.A.F. (*id.* ¶¶ 55, 56).

The Attorney General, through attorney Angeline Attila, then filed a dependency petition[5] based on Freyre's disability and inability to care for M.A.F. (*id.* ¶ 57). At an April 14, 2011 status hearing on the petition, Attila allegedly made a series of misrepresentations to the Circuit Court regarding Freyre's disability, M.A.F.'s condition, the court's comments from the March 30 hearing on the shelter petition, and the availability of 24-hour Medicaid assistance for M.A.F. (*id.* ¶¶ 57, 58). Attila concluded the hearing by informing the court that Hillsborough County could not ensure the safety and well-being of M.A.F. as long as she remained at home with Freyre (*id.* ¶ 57). The Circuit Court ultimately determined that the previously entered shelter order could not be dissolved without an evidentiary hearing, which was set for the week of June 20, 2011 (*id.* ¶ 59).

Meanwhile, Hillsborough Kids began working with staff at Tampa General Hospital to locate a geriatric nursing facility that would accept M.A.F. permanently (*id.* ¶¶ 60-62). The only nursing facility that could provide the appropriate level of care was in Miami-Dade County, and the spot available for M.A.F. would be taken by another patient if not secured quickly (*id.* ¶¶ 62, 63). Due

---

[5]*See* § 39.401, Fla. Stat. (2013).

4

to the short timeline, Jill Adams, a supervising attorney with the Florida Attorney General's Office, contacted another attorney in the Attorney General's Office, Tiffany Short, and advised Short that there were no legal impediments to moving M.A.F. to Miami-Dade County and that Short should begin making arrangements (*id.* ¶ 64). Freyre alleges that she consistently objected to any plans to move M.A.F. (*id.* ¶¶ 65, 72).

As the state officers prepared to move M.A.F. to Miami-Dade County, Freyre asked to accompany M.A.F. on the trip, but her request was denied (*id.* ¶ 73). The officers in charge of M.A.F.'s transport to Miami-Dade County allegedly failed to provide M.A.F. necessary care and medication during the trip (*id.* ¶¶ 74-76). M.A.F. became "hysterical" and dehydrated, and she died soon after arriving at the nursing facility in Miami-Dade County (*id.* ¶ 75).

Freyre brings five claims against Defendants. It is important to note that all of the claims are brought on Freyre's behalf–no claims are brought on behalf of M.A.F. Count I is a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, alleging that Nextgen Alliance, HCSO,[6] and the State of Florida discriminated against Freyre by "denying [Freyre] medically necessary services," resulting in M.A.F.'s unnecessary institutionalization and death (Dkt. 29 ¶¶ 79, 83). Freyre further alleges that Nextgen Alliance, Sheriff Gee, and the State of Florida discriminated against her by segregating M.A.F. and denying Freyre and M.A.F. access to existing community programs (*id.* ¶ 85). Count II is a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), also brought against Nextgen Alliance, Sheriff Gee, and the State of Florida. The allegations supporting Count II are virtually identical to those supporting Count I.

Count III is a claim for conspiracy to deny civil rights brought under 42 U.S.C. § 1985(3)

---

[6]Freyre named Sheriff David Gee as a Defendant in this matter, in his official capacity as Sheriff of Hillsborough County. The Amended Complaint refers to Sheriff Gee and HCSO interchangeably. For consistency purposes, the remainder of this Order will refer to Sheriff Gee as the Defendant.

against Valdez-Corey, Pietrzak, Emerson, Agerious, Attila, Adams, and Short.[7] Freyre alleges that these Defendants conspired to deprive her of her constitutional rights to raise M.A.F. as she saw fit and to be reunited with M.A.F. Counts IV and V assert violations of 42 U.S.C. § 1983 against Nextgen Alliance and Sheriff Gee, respectively. Freyre alleges that Nextgen Alliance and Sheriff Gee deprived her of her constitutional rights as a parent by removing M.A.F. to a distant facility and preventing their reunification.

## II. STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007),

---

[7]The claims against Creshanda Riley were voluntarily dismissed by Freyre (Dkt. 56).

*rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.*

All of the factual allegations contained in the complaint must be accepted as true for the purposes of a motion to dismiss, but this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. DISCUSSION

#### A. Counts I & II: Title II of the ADA and Section 504 of the Rehabilitation Act.

Counts I and II assert claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against Nextgen Alliance, Sheriff Gee, and the State of Florida. Sheriff Gee and the State of Florida argue that both counts must be dismissed for failure to state a claim. Sheriff Gee also argues that Freyre has improperly lumped the claims against the three Defendants together, making it difficult to discern the allegations supporting the claim against each Defendant. The State of Florida argues that Freyre does not have standing to bring Counts I and II.

Counts I and II reference the three Defendants collectively (*see* Dkt. 29 ¶¶ 83, 85, 92, 94). This method of pleading renders it virtually impossible to determine whether Freyre has standing to pursue her claims against each Defendant, or whether she has plausibly stated a claim against each Defendant. For example, a claim under the ADA requires the plaintiff to allege, among other elements, that she was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity." *Am.*

*Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011); *Mack v. City of High Springs*, 486 Fed. Appx. 3, 7 (11th Cir. 2012). The method by which each Defendant "excluded" Freyre from services or "otherwise discriminated" against her is not readily discernable from the allegations in Count I.

It is likewise difficult to assess the allegations in a manner allowing a proper analysis of whether the Freyre's alleged injury is "fairly traceable" to the conduct of each Defendant for the purposes of determining standing.[8] *See Friends of the Earth*, 528 U.S. at 180-81; *Lujan*, 504 U.S. at 560 (the "fairly traceable" element requires a "causal connection" through which the injury "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party"). *Cf. Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (finding no standing where a defendant "played no role" in the challenged action).

The allegations in Counts I and II fail to distinguish between the three named Defendants. These claims are therefore due to be dismissed without prejudice, with leave to file a second amended complaint, in which Freyre shall identify the allegations underlying the claims against each Defendant. *See Fed. Deposit Ins. Corp. v. Briscoe*, No. 1:11-cv-02303-SCJ, 2012 WL 8302215, at *8 (N.D. Ga. Aug. 14, 2012) (reviewing cases within the Eleventh Circuit where courts have dismissed claims without prejudice and allowed repleader where defendants were improperly lumped together as a single entity).

**B.    Count III: 42 U.S.C. § 1985(3).**

Count III of the Amended Complaint is brought under 42 U.S.C. § 1985(3) and alleges that

---

[8]To demonstrate standing, Freyre must show (1) that she has suffered an injury-in-fact that is concrete and particularized, and not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) a favorable judgment is likely to redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). She bears the burden of establishing each of these elements, *Lujan*, 504 U.S. at 461, and standing must be established for each claim she raises. *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253-54.

Valdez-Corey, Pietrzak, Emerson, Argerious, Attila, Adams, and Short engaged in an unlawful conspiracy to deny Freyre her civil rights under the Fourteenth Amendment and "applicable federal laws, including without limitation, the Adoptions and Safe Families Act" (Dkt. 29 ¶ 97).

In pertinent part, 42 U.S.C. § 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992) (quoting *United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).[9]

The second element of a § 1985(3) claim requires the plaintiff to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Local 610*, 463 U.S. at 829; *Griffin*, 403 U.S. at 102; *see Burrell v. Bd. of Trs. of Ga. Military Coll.*,

---

[9] *See also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) ("To come within the legislation a complaint must allege that the defendants did (1) conspire . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having an exercising any right or privilege of a citizen of the United States.") (internal quotations and alterations omitted).

970 F.2d 785, 793 (11th Cir. 1992) (plaintiff must show "a class-based invidiously discriminatory purpose behind the defendants' action."). "This narrow intent requirement erects a significant hurdle for section 1985(3) plaintiffs," 970 F.2d at 794, as § 1985(3) does "not provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.'" *Local 610*, 463 U.S. at 834 (quoting *Griffin*, 403 U.S. at 101).

Defendants argue that Count III must be dismissed because the Amended Complaint fails to state a plausible cause of action under § 1985(3). A careful review of the Amended Complaint reveals that Defendants are correct that Freyre's allegations fail to plausibly allege a conspiracy inspired by an invidiously discriminatory animus.

### 1. *The Amended Complaint Fails to Allege a Conspiracy.*

Defendants first argue that the Amended Complaint contains only broad allegations of conspiracy among Defendants, but no specific facts indicating Defendants agreed to act, or were acting, to deprive Freyre of her constitutional rights. Freyre responds that the Amended Complaint contains allegations of discussions among Defendants concerning the alleged conspiracy, which are sufficient to allege a conspiracy.

To sufficiently allege a conspiracy, a plaintiff must allege, among other things, that the defendants reached an understanding or agreement. *Albra v. City of Ft. Lauderdale*, 232 Fed. Appx. 885, 890 (11th Cir. 2007); *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). The plaintiff is not required to produce "a smoking gun" establishing mutual understanding or willful participation among the conspirators, but the allegations must contain some evidence of an agreement among the defendants. *Rowe*, 279 F.3d at 1283-84. The complaint must also contain "particularized allegations" supporting the existence of such an agreement. *Albra*, 232 Fed. Appx. at 891 (citing *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir.

1998); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

Freyre alleges that Defendants "entered into a conspiracy" (Dkt. 29 ¶ 106), but she does not support that conclusory legal statement by referencing other factual allegations establishing an agreement among Defendants. Nor does Freyre point to any specific allegations of conspiracy in her responses to Defendants' motions to dismiss. Instead, she argues that there were "discussions regarding the conspiracy" (Dkt. 54 at 5), without identifying any specific discussions. The general allegations reveal only one "discussion" that could form the basis for a conspiracy claim.

After Emerson notified Pietrzak that Freyre "seems to be overwhelmed" by M.A.F.'s care (Dkt. 29 ¶ 40), a "multi-disciplinary staffing" was convened and attended by Defendants Emerson, Pietrzak, and Argerious, as well as other individuals not named as Defendants: Erin Thompson, Laura Dill, Joanne White, and Heather Grates (*id.* ¶ 41). During the "staffing," the individuals present allegedly discussed Freyre's disabilities and expressed concerns about Freyre's ability to care for M.A.F. in light of those disabilities. Based on that information, Argerious allegedly made the decision to petition the Circuit Court to shelter M.A.F. at Tampa General Hospital until a medical foster home could be secured.

These allegations simply do not establish that Emerson, Pietrzak, and Argerious reached an "agreement" or an "understanding" rising to the level of a conspiracy. *Albra*, 232 Fed. Appx. at 890; *Rowe*, 279 F.3d at 1283. A decision reached by Argerious based on the information presented to her by other individuals does not plausibly constitute a conspiracy. *See Marx v. Gumbinner*, 716 F. Supp. 1434, 1440 (S.D. Fla. 1989) ("Where a plaintiff's allegations that a conspiracy existed are supported only by the fact that a certain decision was reached . . ., the allegations cannot stand.").

Moreover, other Defendants sued under § 1985(3) were not present at the staffing. Valdez-Corey is not mentioned in the Amended Complaint outside of the introductory allegations (*see* Dkt.

11

29 ¶¶ 10, 11, 12, 27) and the conclusory allegations of Count III (*see id.* ¶ 99, 107-112). And there are no allegations that Valdez-Corey was involved in any discussions with the other Defendants, let alone joined in an understanding or agreement. Nor does Freyre allege that Attila, Adams, or Short were involved in any discussions with any of the other Defendants. Indeed, the only alleged discussions between Attila, Adams, and Short concern their responsibilities as attorneys with the Office of the Florida Attorney General (*see* Dkt. 29 ¶¶ 63-64). As alleged, these discussions do not rise to the level of an "agreement" or "understanding." Even if Attila, Adams, and Short reached a consensus and conspired to deprive Freyre of her constitutional rights, they would be protected by the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The doctrine applies to public entities such as a municipality and its personnel. *See Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (applying intracorporate conspiracy doctrine to bar § 1985(3) claim against two city employees); *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000) (rejecting employee's § 1985(3) claim where employee alleged civil conspiracy among county employees); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (applying intracorporate conspiracy doctrine to shield public university from § 1985(3) liability). As the intracorporate conspiracy doctrine bars § 1985(3) claims against multiple employees of the same city (*Denney*), county (*Dickerson*), and public university (*Chambliss*), it logically follows that the doctrine likewise applies to Attila, Adams, and Short as employees of the same department within the Office of the

Attorney General.

In sum, the Amended Complaint contains no plausible allegations of a conspiracy among the individual Defendants sufficient to sustain a § 1985(3) action.

### 2. *The Amended Complaint Fails to Allege Class-Based Invidious Discrimination.*

Even if Freyre has sufficiently alleged a conspiracy among Defendants, her § 1985(3) claim falters on the "significant hurdle," *Burrell*, 970 F.2d at 794, of alleging a class-based, "invidiously discriminatory animus behind the conspirators' action." *Local 610*, 463 U.S. at 829.

In *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993), the Supreme Court held that a claim brought under § 1985(3) must focus upon the allegedly suspect class *by reason of the plaintiff's inclusion in that class*. *Id.* at 270. The *Bray* plaintiffs alleged a § 1985(3) claim against antiabortion organizations and its members for obstructing entrances to abortion clinics. The plaintiffs sought to base their claim on class-based discriminatory animus against women, but the Supreme Court rejected that theory. The antiabortion defendants, the Court reasoned, were not motivated by animus against women *as a class*, but only against abortion supporters and those seeking abortions. *See id.* at 270 (The record did "not indicate that petitioners' demonstrations are motivated by a purpose . . . directed specifically at women as a class."). *Id.* at 270. That discrete group was not a suspect class and the § 1985(3) claim therefore could not be maintained.

Freyre's claim suffers from the same shortcoming as the one in *Bray*. Freyre does not allege that Defendants foster an animus toward physically handicapped individuals *as a class*, but rather against physically handicapped individuals who are unable to care for their children. The Amended Complaint bears out this shortcoming. Describing what is alleged to be a "pervasive, systemic problem" in Florida, Freyre alleges that the practices of the State of Florida and Hillsborough County have led to the removal of children "because of the parent's physical, learning, or emotional inability

*to care for their children without assistance*" (Dkt. 29 ¶ 76) (emphasis added). Likewise, Freyre alleges in Count III that Defendants "enforced a policy and practice of denying persons with [d]isabilities to have [*sic*] custody of their child when they are *physically unable* to care for their children without available aid[] and support" (Dkt. 29 ¶ 108). Neither of these allegations support the theory that Defendants held a class-based animus toward physically handicapped individuals *by the sole reason of their membership in that allegedly suspect class*.[10] *See also Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.").[11] The claim is therefore due to be dismissed.[12]

Having failed to sufficiently allege a conspiracy among Defendants or any class-based invidious discrimination, Count III must be dismissed. Given the substantial hurdle of pleading some class-based, "invidiously discriminatory animus behind the conspirators' action," *Local 610*, 463 U.S. at 829, and the nature of Defendants' conduct, it appears unlikely that Freyre will be able to state a § 1985(3) claim on any set of given facts. *See Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004) ("The complaint should only be dismissed with prejudice if it appears beyond doubt that [the plaintiff] can prove no set of facts which would entitle it to relief."). Nonetheless, in an abundance of caution, Freyre will be granted

---

[10]Just as the Court in *Bray* did not decide the ultimate issue of whether a gender-based discriminatory animus could support a § 1985(3) claim, the question of whether the class of physically handicapped individuals is sufficiently suspect to support a § 1985(3) claim likewise need not be reached.

[11]Although Freyre alleges that Defendants conspired to deny Freyre her rights as a parent "solely because of her own disability" (Dkt. 29 ¶ 106), this is a conclusory legal statement, which cannot sustain a § 1985(3) claim on its own.

[12]Defendants alternatively argue that they are entitled to Eleventh Amendment and qualified immunity. The constitutional question of Eleventh Amendment immunity need not be reached because Count III fails to state a claim to which Eleventh Amendment immunity would attach. Qualified immunity, on the other hand, cannot be claimed by public officials such as Defendants to avoid liability under § 1985(3). *Burrell*, 870 F.2d at 793.

leave to amend Count III.

    C.    <u>**Count V: 42 U.S.C. § 1983 Against Sheriff Gee.**</u>

Count V is a claim brought under 42 U.S.C. § 1983 against Sheriff Gee in his capacity as Sheriff of Hillsborough County. This is functionally a claim against the Hillsborough County Sheriff's Office. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). Governmental entities may be liable for constitutional violations resulting from the execution of a policy or custom of the governmental entity. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The policy or custom must be the "moving force" behind the constitutional deprivation. *Id.* And the plaintiff must "identify a municipal 'policy' or 'custom' that caused [her] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Sheriff Gee first argues that Count V must be dismissed under *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522 (11th Cir. 1997), because it is duplicative of Counts I and II. In *Holbrook*, the court held that "a plaintiff may not maintain a section 1983 action in lieu of–or in addition to–a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." *Id.* at 1531. Freyre's ADA and Rehabilitation Act claims, however, allege injuries distinct from those in her § 1983 action. In Counts I and II, Freyre alleges that she was discriminated against due to her disability and that public services were not provided to her in an equal manner. Count V, on the other hand, alleges that her fundamental substantive due process right to the custody of M.A.F. was violated due to Sheriff Gee's policy of denying persons with disabilities custody of their children. *See* Dkt. 29 ¶ 139; *Doe v. Kearney*, 329 F.3d 1286, 1292 (11th Cir. 2003) ("Parents have a fundamental right to the custody of their children, and the deprivation of that right effects a cognizable injury."). Sheriff Gee's

15

argument under *Holbrook* is therefore unpersuasive.

Sheriff Gee next argues that Count V must be dismissed because Freyre alleges a claim under *respondeat superior* or vicarious liability, neither of which are cognizable for § 1983 claims. Sheriff Gee is correct that a § 1983 claim may not be brought on the basis of *respondeat superior* or vicarious liability, but Freyre's claim is not based on supervisor liability. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, she contends in Count V that Sheriff Gee's *policy* caused her injury, not the actions of his subordinates. Based on that allegation, Count V need not be dismissed on the basis of supervisory liability.

Finally, Sheriff Gee argues that he is entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suits brought in federal court against an "arm of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Whether a defendant is an "arm of the State" is assessed "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* Four factors are used to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309.[13] The fourth factor is critical and must be established before Eleventh Amendment immunity may be granted. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1526 (11th Cir. 1990) ("In

---

[13]Citing *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm.*, 226 F.3d 1226, 1231-34 (11th Cir. 2000); *Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000); *Tuveson v. Fla. Governor's Council of Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984).

determining whether a public officer is a state official within the protection of eleventh amendment immunity, the courts *must* inquire whether an award of damages would be paid with state funds.") (emphasis added).

Sheriff Gee points to various provisions within the *Florida Statutes*, arguing that they establish the first, second, and third factors and favor a finding that he is an "arm of the State." For the fourth factor, however, Sheriff Gee "submits" in his motion that "the only source of funds available to Defendant to pay any adverse judgments regarding child protective investigations is the grant received from" the Florida Department of Children and Families (Dkt. 44 at 21). This fact may not be considered because it is outside the four corners of the Amended Complaint,[14] and in any event, argument of counsel in pleadings is not evidence. *See United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence."). Sheriff Gee therefore cannot establish that he is an "arm of the State" on the limited record currently available, and his motion to dismiss on Eleventh Amendment immunity grounds is due to be denied. *See Misener Marine Constr., Inc. v. Ga. Ports Auth.*, 199 Fed. Appx. 899, 900 (11th Cir. 2006) (affirming denial of Eleventh Amendment immunity on motion to dismiss due to limited evidentiary record, but allowing defendant to reassert defense on motion for summary judgment); *Brown v. E. Central Health Dist.*, 752 F.2d 615, 617 (11th Cir. 1985) ("Brown and Young contend that the record does not establish an adequate factual basis to determine that East Central is a state sub-agency. We

---

[14]On a Rule 12(b)(6) motion to dismiss, the scope of the district court's review is generally limited to the four corners of the complaint. *Speaker v. U.S. Dep't of Health & Human Servs., Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). There are, however, exceptions to this rule. A district court may consider an extrinsic document on a motion to dismiss if "it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Courts may also consider matters that are judicially noticeable or of public record in 12(b)(6) motions to dismiss without converting them to motions for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Sheriff Gee's argument that any award would be paid out of state funds does not fit into any of these exceptions.

agree. . . . The record does not show that the judgment sought here would expend itself on the state treasury . . . ."). *See generally In re State of New York*, 256 U.S. 490, 500 (1921) (holding that a determination under the Eleventh Amendment requires "that the question is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record"). This denial is without prejudice, however, and Sheriff Gee is entitled to reassert the defense on a more complete record.

Accordingly,

1) The motions to dismiss filed by motions to dismiss filed by Emerson, Argerious, Attila, Adams, Short, Pietrzak, Valdez-Corey, and the State of Florida (Dkts. 36, 37, 45, 46, 47) are **GRANTED**.

2) The motion to dismiss filed by Sheriff Gee (Dkt. 44) is **GRANTED** *in part* and **DENIED** *in part.*

3) Counts I, II, and III of the Amended Complaint are **DISMISSED** *without prejudice.*

4) Plaintiff is **GRANTED** leave to file a second amended complaint within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** this 13th day of May, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record